**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF EDUCATION,<br><br>      Plaintiff,<br><br>      v.<br><br>D.E., individually and on behalf of A.H.D. and A.D., and Y.A.L.E. SCHOOL,<br><br>      Defendants. | CIVIL ACTION<br><br>No. 17-4433 |
| DARLINE E., individually and on behalf of Az.D. and Am.D.,<br><br>      Plaintiff,<br><br>      v.<br><br>PEDRO RIVERA, in his official capacity as Secretary of Education for the Commonwealth of Pennsylvania Department of Education, and COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF EDUCATION,<br><br>      Defendants. |  |

**<u>MEMORANDUM</u>**

**ROBERT F. KELLY, Sr. J.**                 **APRIL 23, 2018**

   This consolidated action stems from a Pennsylvania hearing officer ordering Plaintiff Commonwealth of Pennsylvania Department of Education ("PDE") to reimburse two educational trust funds and satisfy an unpaid private school tuition reconciliation that Young Scholars Kenderton Charter School ("Kenderton Charter") allegedly owed to Defendant Y.A.L.E. School

("Y.A.L.E.").[1] PDE filed an Amended Complaint alleging three counts: Count I is against Defendant D.E. ("Parent") under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, and seeks reversal of the hearing officer's orders requiring PDE to reimburse the educational trust accounts and pay the tuition reconciliation. Counts II and III are against Y.A.L.E. and are for unjust enrichment and indemnification, respectively.

Presently before the Court is Y.A.L.E.'s Motion to Dismiss, which seeks dismissal of the claims of unjust enrichment and indemnification. For the reasons noted below, Y.A.L.E.'s Motion to Dismiss is granted in part and denied in part.

**I.     BACKGROUND**[2]

Parent is the mother of A.H.D. and A.D. (collectively, "Students"), who are eligible for special education and related services under the IDEA. (Am. Compl. ¶ 18.) Both Students were enrolled at Kenderton Charter for some time. (*Id.* ¶ 19.) In July 2014, Parent filed two due process complaints on behalf of Students, seeking an order requiring Kenderton Charter to place the Students at a private school and provide each with a compensatory education. (*Id.* ¶ 21.) In December 2014, administrative decisions were docketed that ordered Kenderton Charter to place Students at a private school for the remainder of the 2014-2015 school year, pay their private tuition, and provide compensatory education. (*Id.* ¶¶ 22, 24.) Kenderton Charter placed Students at Y.A.L.E. (*Id.* ¶¶ 23, 25.) In addition, it created two education trust funds with the

---

[1] On November 3, 2017, Parent filed an action styled as *Darline E., individually and on behalf of Az.D. and Am.D. v. Pedro Rivera, in his official capacity as Secretary of Education for the Commonwealth of Pennsylvania Department of Education, and Commonwealth of Pennsylvania, Department of Education*, Civil Action No. 17-4966, which was assigned to the Honorable Petrese B. Tucker. Parent's Complaint in that action sought attorney's fees, litigation costs, and enforcement of the hearing officer's award of tuition reimbursement and payment of tuition. By Order dated February 28, 2018, Chief Judge Lawrence F. Stengel transferred Civil Action 17-4966 to the undersigned and consolidated the actions under Civil Action 17-4433. (*See* Doc. No. 13.)

[2] We take the facts alleged in the Complaint as true, as we must when deciding a motion under Federal Rule of Civil Procedure 12(b)(6). *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citation omitted).

2

Advocacy Alliance Education Fund Trust to satisfy Students' compensatory education awards. (*Id.* ¶ 26.)

Kenderton Charter paid Y.A.L.E. tuition invoices for the education services provided to Students during the 2014-2015 school year, and it maintained Students' placement at Y.A.L.E. for the 2015-2016 school year. (*Id.* ¶¶ 27-28.) In September 2015, Y.A.L.E. and Kenderton Charter executed contracts providing that Kenderton Charter pay monthly tuition invoices to Y.A.L.E. for the education services during the 2015-2016 school year. (*Id.* ¶ 29.) Kenderton Charter paid Y.A.L.E. all of the monthly tuition invoices associated with A.H.D.'s education, except for the months of May and June 2016, which totaled $8,872.50. (*Id.* ¶ 33.) Similarly, Kenderton Charter failed to pay monthly tuition invoices associated with A.D.'s education for April, May, and June 2016, which totaled $16,134.80, as well as a 2015-2016 tuition reconciliation that totaled $4,386.00. (*Id.* ¶¶ 35-36.) Kenderton Charter closed at the end of the 2015-2016 school year and abandoned its charter. (*Id.* ¶ 37.)

Students enrolled in the School District of Philadelphia following Kenderton Charter's closure. (*Id.* ¶ 39.) While enrolled in the School District of Philadelphia, Students continued to be educated at Y.A.L.E., and there was no disruption of their education throughout at least the 2016-2017 school year. (*Id.* ¶ 40.) Beginning in July 2016, the School District of Philadelphia was responsible for satisfying Students' tuition invoices from Y.A.L.E. (*Id.* ¶ 41.)

In September 2016, Parent's counsel informed PDE of the unsatisfied monthly invoices associated with Students' 2015-2016 school year at Y.A.L.E. and asked PDE to fulfill Kenderton Charter's obligation to pay the tuition. (*Id.* ¶ 43.) PDE informed Parent in October 2016 that it would not pay the tuition bills Kenderton Charter owed to Y.A.L.E, stating that payment of the bills was an issue between Kenderton Charter and Y.A.L.E. (*Id.* ¶ 46.) Sometime after, Parent's

counsel provided Y.A.L.E. with information for contacting and obtaining the tuition payments from Students' trust accounts. (*Id.* ¶ 47.) In January 2017, following receipt of Parent's counsel's information, Y.A.L.E. contacted Students' trusts and requested payment of the unpaid tuition owed. (*Id.* ¶ 48.) The following month, Y.A.L.E. contacted Parent and asked Parent to authorize the trusts to pay the tuition invoices. (*Id.* ¶ 49.) Parent then authorized the trusts to pay Y.A.L.E. for the unpaid tuition. (*Id.* ¶ 50.)

On February 16, 2017, Parent filed two due process complaints on behalf of A.D. and A.H.D. against PDE and Kenderton Charter.[3] (*Id.* ¶ 51.) The due process complaints sought reimbursement of tuition that Parent allegedly paid to Y.A.L.E. in satisfaction of the monthly tuition invoices. (*Id.* ¶ 52.) Although A.D.'s due process complaint did not seek payment of the $4,386.00 tuition reconciliation invoice, Parent and PDE agreed that the hearing officer could determine whether PDE was obligated to pay it. (*Id.* ¶ 54.) PDE then requested confirmation that Parent paid Y.A.L.E. for the education services and sought copies of the payment receipts. (*Id.* ¶¶ 55-56.) Parent's counsel informed PDE that "[Y.A.L.E.] School 'has been asking Parent to satisfy the outstanding invoices for both [A.H.D. and A.D.]. I was under the impression that Parent had satisfied those invoices. But based on my inquiry this morning, I now believe that the invoices will be satisfied imminently.'" (*Id.* ¶ 57) (ellipses omitted) (second alteration in original). By check dated February 23, 2017, the trusts paid $8,872.50 from A.H.D.'s compensatory education funds and $15,134.80 from A.D.'s compensatory education funds.[4]

PDE and Parent submitted the due process matters to the hearing officer for a decision on stipulations of fact without the need for a hearing. (*Id.* ¶ 61.) On July 6, 2017, the hearing

---

[3] The Office of Dispute Resolution bifurcated each due process complaint and assigned separate docket numbers as to PDE and Kenderton. (Am. Compl. ¶ 51(a), (b).)

[4] PDE pleads that the trusts paid "$8,8972.50" from A.H.D.'s funds. However, based on prior averments, it is clear that A.H.D.'s unpaid tuition balance was $8,872.50. (*See id.* ¶ 33.)

officer issued two decisions relating to Students' due process matters, finding and ordering PDE to pay the monthly invoices associated with Students' education services, as well as the tuition reconciliation payment associated with A.D.'s education. (*Id.*, Exs. 1 & 2 (Hearing Officer's Decisions).) The hearing officer made findings of fact, which include, *inter alia*, that the "contract between [Kenderton Charter] and [Y.A.L.E.] did not allow [Y.A.L.E.] to charge [P]arent for FAPE related costs"; Y.A.L.E. could not directly or indirectly force or encourage Parent to pay for FAPE services when Kenderton Charter placed Students; Parent had no obligation to pay Y.A.L.E. tuition invoices that Kenderton Charter owed to Y.A.L.E.; and Parent voluntarily paid the tuition invoices via the trusts that Kenderton Charter owed to Y.A.L.E. (*Id.* ¶ 64.)

On January 22, 2018, PDE filed an Amended Complaint against Parent under the IDEA and brought state law claims against Y.A.L.E. for unjust enrichment and indemnification. As it pertains to Parent, PDE seeks reversal of the hearing officer's decisions requiring it to pay the monthly invoices and tuition reconciliation. In the alternative, PDE seeks damages from Y.A.L.E. for unjust enrichment and indemnification in the event the hearing officer's decisions are not reversed. On March 6, 2018, Y.A.L.E. filed a Motion to Dismiss the claims asserted against it under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Y.A.L.E.'s Motion is granted in part and denied in part.

## II.     LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)) (internal quotation marks omitted). However, courts need not "accept mere[] conclusory factual allegations or legal assertions." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016) (citing *Iqbal*, 556 U.S. at 678-79). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555. Finally, we may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." *Davis*, 824 F.3d at 341 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)) (internal quotation marks omitted).

## III. DISCUSSION

### A. Unjust Enrichment

Under Pennsylvania law, the elements of unjust enrichment include: "(1) plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) acceptance and retention by the defendant of the benefits, under the circumstances, would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit." *Glob. Ground Support, LLC v. Glazer Enters., Inc.*, 581 F. Supp. 2d 669, 675 (E.D. Pa. 2008) (citing *Com. ex rel. Pappert v. TAP Pharm. Prods., Inc.*, 885 A.2d 1127, 1137 (Pa. Commw. Ct. 2005)); *see also iRecycleNow.com v. Starr Indem. & Liab. Co.*, 674 F. App'x 161, 162 (3d Cir. 2017) (citations omitted). "The polestar of the unjust enrichment inquiry is whether the

defendant has been unjustly enriched[.]" *Reese v. Pook & Pook, LLC.*, 158 F. Supp. 3d 271, 301 (E.D. Pa. 2016) (quoting *Glob. Ground*, 581 F. Supp. 2d at 675). Indeed, "[t]he most significant element of the doctrine is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010) (quoting *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. Ct. 2001)). It requires the claimant showing "that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008) (quoting *Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. Ct. 1985)).

Y.A.L.E. argues that PDE's claim of unjust enrichment fails because there are no allegations that PDE conferred a benefit upon Y.A.L.E. and that PDE cannot establish that Y.A.L.E.'s retention of the tuition payments would be unconscionable. (Def.'s Mem. Supp. Mot. Dismiss 5-6.)

As for the first element of unjust enrichment, Y.A.L.E. argues that, although Parent conferred a benefit upon Y.A.L.E. by virtue of the payment of tuition, there are no allegations that PDE conferred a benefit upon Y.A.L.E. (*Id.* at 5.) However, Y.A.L.E. ignores the fact that the conferred "benefit need not be the result of a direct relationship between the parties in order to fulfill such element of unjust enrichment." *In re Actiq Sales & Mktg. Practices Litig.*, 790 F. Supp. 2d 313, 330 (E.D. Pa. 2011) (citing *Benefit Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985)). PDE pleads that the hearing officer ordered it to pay past monthly tuition invoices and the tuition reconciliation associated with Students' education at Y.A.L.E. Because Parent conferred a benefit upon Y.A.L.E., we believe that PDE

being required to reimburse the trust accounts and pay the tuition reconciliation would at least indirectly confer a benefit upon Y.A.L.E. Therefore, PDE has alleged sufficient facts to adequately plead the first element of unjust enrichment under Pennsylvania law.

Regarding the third element of unjust enrichment, Y.A.L.E. argues that it would not be unconscionable for it to retain the tuition payments because more services were provided than the contract required. (Def.'s Mem. Supp. Mot. Dismiss 5-6.) In particular, Y.A.L.E. claims that it would not be unconscionable for it to receive payment for services that it actually rendered, despite Kenderton Charter not paying Y.A.L.E. for several months' worth of payments. (*Id.*)

However, as the hearing officer noted in his decisions, if a school district or charter school does not pay a private school's tuition, the IDEA prohibits the private school from seeking payment from the student's parents. *See* 34 C.F.R. § 300.39(b)(1) ("At no cost means that all specially-designed instruction is provided without charge, but does not preclude incidental fees that are normally charged to nondisabled students or their parents as a part of the regular education program."); (Am. Compl., Ex. 1 at 14; Ex. 2 at 13.) Thus, according to PDE, it would be inequitable or unconscionable for Y.A.L.E. to retain the benefits of payments from Parent to which it was prohibited from seeking under the IDEA. Based on the foregoing, the Court finds that PDE has alleged sufficient facts to plead the third element of unjust enrichment. Accordingly, Y.A.L.E.'s Motion is denied to the extent it seeks dismissal of unjust enrichment (Count II of the Amended Complaint).

### B. Indemnification

"[I]ndemnification shifts the entire loss from one party to another." *Nat'l R.R. Passenger Corp. v. URS Corp.*, 528 F. Supp. 2d 525, 532 (E.D. Pa. 2007) (quoting *Richardson v. John F. Kennedy Mem'l Hosp.*, 838 F. Supp. 979, 989 (E.D. Pa. 1993)). "Under Pennsylvania law,

indemnity is available only (1) 'where there is an express contract to indemnify,' or (2) where the party seeking indemnity is vicariously or secondarily liable for the indemnitor's acts." *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 448 (3d Cir. 2000) (quoting *Richardson*, 838 F. Supp. at 989). Here, PDE does not allege that it had a contract with Y.A.L.E. Therefore, for PDE to be indemnified, some form of secondary or vicarious liability must be present.

When there is no express contractual indemnification, common law indemnification "arises by operation of law and will be allowed where necessary to prevent an unjust result[,]" such that it "shifts the entire responsibility for damages from a party who, without any fault, has been required to pay because of a *legal relationship to the party at fault*." *City of Wilkes-Barre v. Kaminski Bros.*, 804 A.2d 89, 92 (Pa. Commw. Ct. 2002) (emphasis added) (citation omitted). Y.A.L.E. argues that PDE's claim of indemnification fails because there is no "special relationship" between itself and PDE for there to be secondary or vicarious liability. (Def.'s Mem. Supp. Mot. Dismiss 7.) In response, PDE asserts that it had a "limited legal relationship" with Kenderton Charter and that under the IDEA, this independent relationship resulted in PDE being secondarily liable in having to reimburse Students' trust accounts. (Pl.'s Resp. in Opp'n Def.'s Mot. Dismiss 8.)

We agree with Y.A.L.E. PDE's argument concerning whether it had a "limited legal relationship" with Kenderton Charter misses the mark because PDE is not seeking indemnification from Kenderton Charter, but from Y.A.L.E. In the absence of fault on the party seeking common law indemnification, Pennsylvania law makes clear that the cause of action shifts the responsibility of damages from one party to another because of a legal relationship. *See Kaminski Bros.*, 804 A.2d at 92. PDE pleads no facts, and puts forth no argument, that it had

9

any type of relationship with Y.A.L.E. such that it would be secondarily or vicariously liable to Y.A.L.E. *See Nat'l R.R.*, 528 F. Supp. 2d at 532. Accordingly, PDE's claim of indemnification (Count III of the Amended Complaint) fails as a matter of law, and Y.A.L.E.'s Motion to Dismiss is granted with respect to it.

## IV. CONCLUSION

Based on the facts pleaded in the Amended Complaint, we believe that PDE has met each of the required elements of unjust enrichment under Pennsylvania law. However, regarding indemnification, PDE has failed to establish that it had a legal relationship with Y.A.L.E. such that it is secondarily or vicariously liable for Y.A.L.E.'s actions. Therefore, PDE's claim of indemnification is dismissed with prejudice.

Accordingly, Y.A.L.E.'s Motion to Dismiss is denied as to unjust enrichment, but granted as to indemnification.

An appropriate Order follows.